GEORGE E. DOTY *et al. vs.* ORIENTAL PRINT WORKS COMPANY.

JULY 6, 1907.

PRESENT: Douglas, C. J., Dubois, Blodgett, and Johnson, JJ.

(1)  *Mortgages.  Machinery.  Appurtenances to Machines.*

The word "machinery" in a mortgage deed covers copper rolls constructed to be used in, and appurtenances necessary to the working of, printing machines included in the mortgage.

(2)  *Bonds.  Bona fide Holder.*

A trust mortgage set out that at a meeting of the directors of the mortgagor the president and treasurer were authorized to negotiate and deliver certain mortgage coupon bonds of a certain tenor, and were further authorized to execute and deliver, to secure the same, a mortgage trust deed upon the property of the mortgagor, and that the stockholders of the mortgagor thereafter ratified and confirmed the acts of such officers and authorized said officers to negotiate and deliver such bonds and mortgage, and contained substantially the form of such bond which itself stated that it was executed and delivered in pursuance of votes of the stockholders and directors of the mortgagor, and referred to the terms of the mortgage, and the bonds contained the further provision that they should not be valid unless the certificate endorsed thereon should be signed by the trustee.

Claimant was a *bona fide* purchaser of certain of the bonds from the treasurer of mortgagor, to whom the bonds had been delivered by the trustee in accordance with the provisions of article 18 of the mortgage, "All the bonds are upon their due execution and on the delivery to-the trustee of this instrument to be certified and delivered by the trustee forthwith to or on the written order of the treasurer of the company" :—

*Held,* that, the claimant having obtained the bonds from the proper custodian, and being certified to by the trustee, they were *prima facie* valid.

*Held,* further, that the proper officers having executed the bonds and taken them to the trustee for certification, which had in turn delivered them to the treasurer under the terms of the mortgage, if any loss had occurred through improper negotiation thereafter by the latter, it should fall upon the party who had allowed them to be issued rather than upon the innocent purchaser.

*Held,* further, that the sale of the bonds was authorized by the mortgagor.

(3)   *Bonds.   Security taken as affecting Rights of Creditor.*

Where one who was the owner of certain bonds entered into an agreement with the person who negotiated them, by which on the payment of certain sums by the latter, the former agreed to take no action against him on account of the sale of such bonds, which agreement for payment was not kept, he is not precluded, by reason thereof, from thereafter pursuing his remedy under the bonds.

Equity.   The facts are stated in full in the opinion.   Heard on appeal from decree of Superior Court denying petition for leave to intervene, and decree reversed.

Dubois, J.   This is the appeal of John Milton Tenney, of Methuen, in the Commonwealth of Massachusetts, from a decree of the Superior Court denying and dismissing his petition for leave to intervene in the above entitled equity cause as a preferred creditor of said Oriental Print Works Company.

The appellant in said petition alleges that he is the owner and holder of ten bonds of said company, numbered from 151 to 160, both inclusive, and that the same were ten of a series of two hundred bonds, of the par value of one thousand dollars each, numbered consecutively from 1 to 200, both inclusive, all bearing date October 1st, 1900, and being of the same tenor and for the same term of twenty years, and purported to be secured by a trust deed of the lands, buildings, machinery, leases of property and fixtures of said Oriental Print Works Company, bearing date October 1st, 1900; that no other of said bonds than those so owned and held by him are outstanding or held by any purchaser for value or good-faith holder; that a very large amount of property covered by said mortgage has been converted into money and is now in the hands of the receiver appointed in this case, and that there is no lien on said property or the proceeds thereof prior to that of your petitioner on account of said bonds, and that said money is now available for payment to him on account of said bonds.   The petition concludes with a prayer that the petitioner may be permitted to file the same against said receiver and said respondent, and that citation issue to him and it requiring them to show cause, if any they have, why the petitioner ought not to be admitted as a preferred creditor of said Oriental Print Works Company,

for the amount now in the hands of the receiver produced by the sale of the property covered by said mortgage, and as an unsecured creditor for the balance of his claim on said bonds, and that the money derived from the sale of the property covered by said mortgage may be paid to him.

The decree appealed from is of the tenor following:

"This cause came on to be heard on Petition of J. Milton Tenney, and was heard upon Agreed Statement of Facts and oral testimony, and was argued by counsel, and it appearing to the Court that the Treasurer of said Oriental Print Works in said Petition mentioned had no authority to negotiate the bonds mentioned in said Petition, and that the consideration received by said Treasurer for said bonds was never paid to or received by said Oriental Print Works, or its Receiver, and that neither said Oriental Print Works, nor its said Receiver, has ratified said sale of said bonds, and thereupon, upon consideration thereof, it is ordered, adjudged and decreed, that the prayer of said Petition be, and it is, hereby denied, and said Petition is hereby dismissed."

The case was heard in this court upon a transcript of the testimony taken and an admission and agreement made before the Superior Court, and upon an original and supplemental agreed statement of facts. The testimony taken was that of the appellant and that of J. Warren Landor, and the admission and agreement was that "Judge Parkhurst, (the receiver in the case) if present would testify,—that Mr. Wyman never returned the funds which were the proceeds of the sale of the bonds to the Company, and that in a conversation which Judge Parkhurst had with Mr. Wyman in Boston, Mr. Wyman admitted that fact to him and admitted that he personally paid the interest on those bonds during the time that Mr. Tenney said he received interest."

The testimony of the appellant was to the effect that he purchased the bonds in question, and paid for them, December 1st, 1900, the sum of $9,600.00 by check, which afterwards was lost. That the check was the check of the Methuen Hat Company, which he gave as the treasurer of the company; he also offered the ledger and cash book of that company in support of

his testimony; that he cut off the coupons as they became due, put them in his local bank for collection, and got credit for them up to October, 1905, when the cashier reported that the coupons had come back, and reported that there were no funds —the coupons were then offered in evidence.   He further testified that he had first known Ferdinand A. Wyman about twenty years before, when he had occasion for the services of a lawyer and was talking with his brothers about it; that he said he didn't know what lawyer to go to, as he had never employed one; his brother said he knew of Ferdinand A. Wyman, in Boston; that he went there at once and employed Wyman, who managed his affairs with diligence and success, to his great satisfaction; that a year or two after that Mr. Wyman sold him $16,000.00 worth of bonds of an electric lighting company, which paid him all right; that in the course of two or three years more Wyman sold him $10,000.00 worth of bonds of the Oldtown Electric Company; that, on account of his age, he had thought of arranging his affairs, as he had a wife and an only daughter, so he had Wyman make his will, and appointed him as one of the executors therein; that the will was in existence at the time of the purchase of the Oriental bonds; that he had great confidence in Wyman at that time, and bought and paid for the bonds in good faith, that he understood it was a first mortgage on the property; that after that he had dealings concerning the Oldtown bonds, which had matured, and which he delivered to Mr. Wyman for sale; that Mr. Wyman sold the bonds, and kept the money for more than a year and a half, pretending that there had been a "little hitch" in the proceedings which had delayed the sale of the bonds; that he employed new counsel, and acted under their advice; that he said to Wyman, "See here, I know all about it, you got that money a year and a half ago, and I want it;" that afterwards Wyman paid him for those bonds; that this occurred a year or two before "this thing came up."

In cross-examination, Mr. Tenney said that he had an agreement with Mr. Wyman and his brother under which he had received $3,150.00.   The agreement was introduced in evidence and is of the tenor following:

"This Agreement between Ferdinand A. Wyman, John M. Tenney, and Alphonso A. Wyman, witnesseth as follows:

"*Whereas*, said Ferdinand A. Wyman sold to said Tenney (10) bonds of the Oriental Print Works Company numbered 151 to 160 inclusive, for the sum of Nine Thousand Six Hundred Dollars ($9,600) which was paid by said Tenney to said Ferdinand A. Wyman on or about December 1st, 1900, as the purchase price of said bonds

"*And whereas* said Tenney claims that by reason of the circumstances attending said transaction said Ferdinand A. Wyman is liable to repay to said Tenney said sum with interest thereon

"*And whereas* said Tenney has received heretofore in exchange for coupons attached to said bonds the following sums upon the dates stated after the said sums—$300 April 1st, 1901; $300 October 1st, 1901; $300 April 1st, 1902; $300 October 1st, 1902; $300 April 1st, 1903; $300 October 1st, 1903; $300 April 1st, 1904; $300 October 1st, 1904; $300 April 1st, 1905—all of which payments were in fact made by funds supplied by said Ferdinand A. Wyman.

"*And whereas* said Ferdinand A. Wyman has also paid to said Tenney on account of said claim $500 on January 1st, 1905, and a further sum of $500 on January 6th 1906

"*And whereas* said Ferdinand A. Wyman is entitled to credit for each of said payments as against interest at the rate of 6 per centum on the principal of said claim due on the date of each payment and as to any balance of any such payment in excess of such interest is entitled to credit against the principal then outstanding (making the total sum now due on said claim in the neighborhood of $8800)

"*And whereas* said Ferdinand A. Wyman is largely indebted to said Alphonso A. Wyman and desires and hereby requests of said Tenney that any benefits which may at any time come to said Ferdinand A. Wyman under this agreement may be paid to and received by said Alphonso A. Wyman on account of said indebtedness

"*Now therefore* it is hereby agreed as follows:

"Said Ferdinand A. Wyman agrees

"*First* that he will pay or cause to be paid to said Tenney the following sums $750 during the month of February 1906 $500 during the month of March 1906 $1,000 during the month of April 1906 and $1,500 during each succeeding month thereafter until the full sum of $9,600 (less the credits above referred to) together with interest at 6 per centum per annum from December 1st 1900 on said $9,600 or on the balance from time to time unpaid thereafter shall have been paid in full the final payment to be for such sum less than $1,500 as equals the balance of said indebtedness due at the time of payment.

"*Second*, that said claim of said Tenney against said Ferdinand A. Wyman shall remain unaffected except as it is extinguished by the aforesaid payments and that in the event of any default by said Ferdinand A. Wyman in any of said payments said Tenney may apply all payments theretofore made on account of said claim and may be free to take such proceedings as he sees fit against said Ferdinand A. Wyman in respect of the unpaid balance of said claim

"Said Tenney agrees

"*First* that so long as said Ferdinand A. Wyman makes no default in the provisions of this agreement he will take no steps against said Ferdinand A. Wyman upon his claim

"*Second* that when said claim is paid in full he will turn over said bonds to said Alphonso A. Wyman together with a proper assignment of all his rights under said bonds against any assets of said Oriental Print Works Company or otherwise

"*Third* that in the meantime he will permit any proceedings which said Ferdinand A. Wyman wishes to be taken to reach any assets of said Oriental Print Works Company to which he said Tenney may be entitled as the holder of said bonds to be taken in his name provided that said Ferdinand A. Wyman bears all the expense of such proceedings and that he said Tenney is properly indemnified against the costs of such proceedings but all obligation under this clause shall cease if said Ferdinand A. Wyman makes any default in carrying out the provisions of this agreement.

"*Fourth* to apply in reduction of his said claim against said Ferdinand A. Wyman any sums which he may receive as the proceeds of such proceedings, and in case any balance of said proceeds shall remain after the extinguishment of his said claim to pay such balance forthwith to said Alphonso A. Wyman

"Said Alphonso A. Wyman agrees to take all steps in his power to cause this agreement to be carried out and to accept the performance by said Tenney of his agreements aforesaid

"Each party to this agreement makes all promises jointly and severally with each other party hereto and all promises by any party are made for himself his executors and administrators

"In witness whereof said Ferdinand A. Wyman John M. Tenney and Alphonso A. Wyman have hereto set their hands and seals the        day of         February 1906

> "FERDINAND A. WYMAN
> "ALPHONSO A. WYMAN
> "J. M. TENNEY."

In redirect examination, Mr. Tenney testified that the agreement had not been carried out; that Mr. Wyman had defaulted several times, but had paid four hundred dollars within two or three months; that the agreement was still in existence; that certain collaterals named in another agreement had been received by his attorney for him; that the value of the collaterals amounted to twenty-five hundred dollars. The agreement was introduced in evidence, and reads as follows:

"*Whereas* Ferdinand A. Wyman John M. Tenney and Alphonso A. Wyman have executed an agreement in writing dated February 1906

"*And whereas* said Ferdinand A. Wyman has not complied with his agreement therein contained to pay to said Tenney the sum of $750 during the month of February 1906

"*And whereas* said Ferdinand A. Wyman has delivered to said Tenney as collateral security for the performance by him of the obligations contained in said written agreement five notes for $500 each dated February 26th 1906 signed by Will-

iam G. Rose and payable in one two three four and five years to the order of said Ferdinand A. Wyman and endorsed in blank by him also a mortgage from said Rose to said Ferdinand A. Wyman dated and acknowledged February 26th 1906 on property in Grand Lake Stream Washington county Maine securing said notes also an assignment of said mortgage executed by said Ferdinand A. Wyman dated and acknowledged February 28th 1906

"*Now therefore* said John M. Tenney hereby acknowledges the receipt of said notes mortgage and assignment as collateral security as aforesaid and agrees to return said notes mortgage and assignment to said Ferdinand A. Wyman at any time after March 31st 1906 upon the performance by said Ferdinand A. Wyman of all the obligations expressed in said agreement to be performed prior to the date of said return, the understanding being that until and unless said Ferdinand A. Wyman shall perform the said obligations the said Tenney may retain said notes mortgage and assignment and collect the proceeds thereof and apply the same against the sums due to him from said Ferdinand A. Wyman under said agreement provided and it is hereby expressly understood that the acceptance of said notes mortgage and assignment is without prejudice to all rights of said Tenney under said agreement in writing between said Tenney said Ferdinand A. Wyman and said Alphonso A. Wyman and that none of said rights are in any way waived or suspended.

"JOHN M. TENNEY,<br>
"METHUEN, MASS.,<br>
"Mar. 8. 1906."

J. Warren Landor testified that he belonged in Providence, was connected with the Oriental Print Works Company as superintendent and general manager, and believed he had been president of the company, but was not sure if he was at the time that the trust mortgage was made to the International Trust Company; he afterwards became convinced that he was president at that time; that he had been employed in the print works before the Oriental Print Works took hold; that he had

been in the print works business all his lifetime, and at that particular place since 1896; that he had seen the copper rolls spoken of; that it would be necessary to use the copper rolls to print a piece of cloth; that there would be the same connection in a printing establishment as in a book-printing place where you are going to print a book, the machine prints the book, and the type makes the print though it is not a part of the machine, it is necessary to use in the machine to make the print.    He further testified as to the design and the ownership of the pattern; the number of machines and rolls in the Oriental Print Works; the number of colors that could be used, and the greatest number of rolls that could be used on one machine at the same time; how the rolls were constructed; that in buying a machine rolls would not come with it, and that in buying rolls you would not get a machine; that they are bought from different manufacturers.    He further testified that he had nothing to do with the negotiation or sale of these bonds to Mr. Tenney, and that he did not know of it.    In cross-examination he testified that in operating these rolls you can operate them only in connection with the machine; that their exclusive use is in connection with the machines; that a machine without them can not do the work for which it was intended; that it has to have some kind of a roller, it may be one kind or another.    He also testified as follows:    "Q. 46. During that time that it is incorporated in the machine it acts as an essential part of the printing mechanism?    A. Carries the color to the machine.    Q. 47. Yes, and the design?    A. Yes, sure;" and further, in redirect-examination:    "Q. 48. The copper rolls are a very large part of the assets of the printing establishment?    A. They are, yes."

The first agreed statement of facts is as follows:

"The Oriental Print Works Company a corporation organized in 1900 under the laws of Maine bought a plant for carrying on its business at Apponaug, Rhode Island.    The plant was subject to a mortgage made by the previous owner to Eben D. Jordan which was not assumed by the Oriental Print Works Company when it made its purchase.

"To pay off this mortgage and to raise money to run its business the Oriental Print Works Company executed a mortgage dated October 1st, 1900, which was duly recorded to the International Trust Company of Boston Trustee as security for a series of 200 bonds for $1,000 each amounting in the aggregate to $200,000. This mortgage covered the lands, buildings, machinery, leases of realty and fixtures owned by the Oriental Print Works Company, for greater certainty reference to this mortgage is hereby had.

"Of these bonds 150 were put in the hands of the International Trust Company and are still in its possession and the remaining 50 were delivered to F. A. Wyman the treasurer of the Oriental Print Works Company in accordance with the provisions of Article 18 of the mortgage (which reads as follows: "Article 18. All the bonds hereby secured are upon their due execution and on the delivery to the Trustee of this instrument, to be certified and delivered by the Trustee forthwith to, or on the written order of the Treasurer of the Company). Of these bonds he still retains 40. The remaining 10 bonds form the basis of the claim of the present petitioner.

"On the petition of George E. Doty et al the Oriental Print Works Company was put in the hands of a receiver. On March 30, 1901, the first mortgagee, the Eben D. Jordan Estate, was allowed by the court to take possession of the plant and to foreclose its mortgage. The receiver collected all the property not taken by the first mortgagee and reduced it to cash. A part of the property thus converted into cash by the receiver consisted of copper rolls used for printing cloth and he has in his hands as the gross proceeds of said copper rolls sold $4,773.15. All of these rolls were bought by the Oriental Print Works Company after the purchase of the plant. Various designs were engraved on these copper rolls. When a certain pattern was to be printed on cloth one or more of these rolls containing the design or part of a design was affixed to a printing machine and the cloth was brought into contact with the revolving rolls and in this way the design was printed on the cloth. The printing machines could be bought in the market without the rolls and the rolls could be bought without the

machines but the printing machines could not be used to print cloth without the rolls and the rolls could not be used to print cloth except when connected with the printing machines. When a new design was desired the rolls which were in the machines were removed. New rolls were inserted and the old rolls were stored on the premises until it was thought desirable to use the former design again.

"All the copper rolls sold by the receiver were intended to be operated exclusively by machinery in the business of the Oriental Print Works Company and were from time to time in actual use as instrumentalities of the business of said company in connection with or operated by its printing machines in the printing of cloth."

The following excerpt from the supplemental agreed statement of facts contains all that is necessary for the present consideration:

"In the above entitled cause it is further agreed as follows:

"Exhibit 11, referred to on page 3 of the testimony, but not delivered to the clerk of the Court, is the ledger of the Methuen Hat Company, and shows, on page 300, under date of December 1st, 1900, an entry of $9,600 charged against the petitioner, J. Milton Tenney.

"Exhibit 12, referred to on page 3 of the testimony, but not delivered to the clerk of the court, is the cash book of the Methuen Hat Company, and shows, on page 95, under date of December 1st, 1900, an entry ' $9,600, J. Milton Tenney.'

"Each of the bonds, Exhibits 1 to 10 inclusive, was in fact signed by J. Warren Landor, the president of the Oriental Print Works Company.

"On December 1st, 1900, the account of Ferdinand A. Wyman with the Oriental Print Works Company showed a debit of $2,379.19, and a credit of $7,733.48, *i. e.*, a credit balance of $5,354.29.

"At that time Mr. Wyman was the holder of the note of the Oriental Print Works Company for $1,025.00, dated September 15, 1900, payable six months after date, to the order of Ferdinand A. Wyman.

"The books of the Oriental Print Works Company do not

anywhere show any charge made to Mr. Wyman for the money received for the sale of the bond.

"Ferdinand A. Wyman presented claims to the receiver as follows:

| | |
|---|---|
| Book accounts for advances..................... | $13,376 36 |
| Note of Oriental Print Works Co................ | 1,025 00 |
| | $14,401 36 |

but the statement presented by Mr. Wyman did not show the receipt by him of $9,600.00 for the ten bonds in question, nor in his account with the Oriental Print Works Company did the Company anywhere receive credit for said $9,600.00."

In this case three questions arise for our determination.

*First*, Were the copper rolls covered by the mortgage?

*Second*, Was the sale of the bonds authorized by the corporation? and

*Third*, Are the rights of the appellant affected by the agreements made by him with Wyman?

(1)    The answer to the first question depends upon the construction to be given to the word "machinery" in the granting clause in the mortgage trust deed. According to Bouvier Law Dictionary, "Machinery" is a more comprehensive term than machine, including the appurtenances necessary to the working of a machine. By Webster's International Dictionary the second definition of the word is given as the working parts of a machine, engine, or instrument. By the Century, and by the Standard Dictionaries, "machinery" is defined as parts of a machine considered collectively, any construction of mechanical means designed to work together so as to effect a given end. And see *Seavey* v. *Central Ins. Co.*, 111 Mass. 540; *Buchanan* v. *Exchange Co.*, 61 N. Y. 26, 33; *Brewer* v. *Ford*, 12 N. Y. Sup. 621; *State* v. *Avery*, 44 Vt. 629; *Brower* v. *Locke*, 31 Ind. App. 353, 358.

As appears in the agreed statement of facts, "all the copper rolls sold by the receiver were intended to be operated exclusively by machinery in the business of the Oriental Print Works Company, and were from time to time in actual use as instru-

mentalities of the business of said company in connection with or operated by its printing machines in the printing of cloth." It also appears from the testimony of Mr. Landor that a machine without rolls can not do the work for which it was intended, and that you can operate rolls only in connection with the machine.

The copper rolls were not designed or adapted for use by hand. They were constructed to be used in the printing machines of the respondent corporation. They were not machines themselves, but parts of machines while used in the machines; they were appurtenances necessary to the working of the machines, therefore they were a part of the machinery, whether in use or not, so long as they were in condition and ready for use. We are therefore of the opinion that the copper rolls were covered by the mortgage.

In answering the second question, it is necessary to consider the following portion of the trust mortgage:

(2) "This indenture dated the first day of October, A. D. 1900, by and between the Oriental Print Works Company, a corporation duly organized under the laws of the State of Maine, and having business offices in the city of Portland, Maine, hereinafter called the 'company,' party of the first part, and the International Trust Company, a corporation duly established under the laws of the Commonwealth of Massachusetts, and having its principal place of business in the city of Boston, in said Commonwealth, hereinafter called the 'trustee,' a party of the second part.

"Witnesseth:

"*That whereas,* the said company requires funds for the purchase of its manufacturing plant and the equipment thereof, and other property, rights and assets useful in its business, and for the redemption of a certain mortgage lien now existing upon the said plant and equipment, and desires to raise such funds upon its corporate bonds secured by mortgage trust deed of all its lands, buildings, machinery, leases of realty, and fixtures.

"*And whereas,* at a meeting of the directors of the said com-

pany duly notified, all of the directors being present, held upon the sixth day of September, 1900, upon motion duly seconded it was unanimously voted: that the president and treasurer be and they are hereby authorized to cause to be made, issued, negotiated and delivered in the name of this Company, mortgage coupon bonds for one thousand dollars ($1,000.) each, to the amount of two hundred thousand dollars ($200,000), payable in twenty years from their date (which date, for the purposes of convenience shall be, and is hereby fixed as October 1st, 1900) in gold coin of the United States of America of the present standard of weight and fineness, subject, however, to call and redemption at or after the expiration of ten years from their date, upon tender of all sums due thereon to the time fixed for such redemption, together with a premium of five per cent. upon the principal thereof as provided in trust deed given to secure the same, with interest thereon at the rate of six per cent. per annum payable on the first days of each April and October, the form of said bonds to be determined by said president and treasurer; and to secure said bonds the said president and treasurer shall cause to be executed and delivered to a trustee for bondholders, in the name and behalf of the company and by its proper officers, a mortgage deed of trust constituting a lien on all its lands, buildings, machinery, leases of realty, and fixtures, now owned or hereafter acquired by the Company and wherever situated, such mortgage deed to contain all such terms and provisions as may be determined by said president and treasurer.

*And Whereas*, the president and treasurer have examined and approved this indenture, and do approve the form of the bonds and coupons as herein set forth under the said resolutions of the said directors as well as by virtue of every other power thereto enabling.

"*And, whereas,* the stockholders of the said company at a special meeting duly notified held on the first day of October A. D. 1900, the holders of all shares of the said company being present, upon motion duly seconded unanimously voted—that the resolution of the directors of this company at their meeting of the sixth day of September, 1900, whereby the issue of cer-

tain mortgage bonds to the amount of two hundred thousand dollars ($200,000) was authorized, and the execution of a mortgage deed of trust was directed; and also that all acts of the president and treasurer of this company in the preparation for the issue of said mortgage bonds and for the execution of said mortgage deed in connection therewith; be and they are hereby ratified and confirmed; and that the said president and treasurer be and they hereby are authorized and directed to cause to be made, issued, negotiated, and delivered in the name of this company mortgage coupon bonds as provided in said resolution, and to cause to be executed and delivered to the International Trust Company of Boston, Massachusetts, as trustee for bondholders in the name and behalf of the company a mortgage deed of trust as provided in said resolution for acceptance and certification by the said trustee.

"*And whereas,* said bonds with interest coupons attached, are to be executed and authenticated by the trustee and issued as authorized and directed as aforesaid, said bonds being consecutively numbered from 1 to 200 inclusive and the coupons attached to each of said bonds bearing the number of the bond to which they are attached, and being also consecutively numbered from 1 to 40 inclusive, which bonds and coupons, and the Trustee's certificate endorsed upon said bonds are substantially in the following form, to wit:

"UNITED STATES OF AMERICA.

"FIRST MORTGAGE $^{10}\!\!/_{20}$ SIX PER CENT. GOLD BOND.

"OF THE

"ORIENTAL PRINT WORKS COMPANY,

"Offices at Portland, Maine; and Apponaug, Rhode Island.

"Total Authorized Issue, $200,000.—

"No.                                                          $1,000.—

"For value received, the Oriental Print Works Company, promises to pay to the International Trust Company, trustee hereinafter mentioned, or to the bearer hereof, the sum of One Thousand Dollars ($1,000—) in gold coin of the United States of America of the present standard of weight and fineness at the

office of said International Trust Company in the City of Boston, Massachusetts, in twenty years from the date hereof, to wit, on the first day of October, 1920, (or on call at any time after the expiration of ten years from date as hereinafter provided) with interest thereon at the rate of six (6) per cent. per annum payable in like gold coin on the first days of April and October in each year, at the office of the said International Trust Company according to the tenor of the coupons hereto attached, upon the presentation and surrender thereof respectively.

"This bond is one of a series of two hundred (200) bonds for one thousand dollars ($1,000—) each, amounting in the aggregate to two hundred thousand dollars ($200,000—) numbered consecutively from one (1) to two hundred (200) both inclusive, all bearing even date herewith and being the same tenor and for the same term of twenty years, executed and delivered in pursuance of votes of the stockholders and directors of said Oriental Print Works Company, authorizing the issue of said bonds and of the mortgage hereinafter mentioned.

"Payment of this bond and of the coupons attached is secured in the manner and upon the terms therein stated, by a mortgage trust deed of the lands, buildings, machinery, leases of realty, and fixtures of said Oriental Print Works Company, bearing even date herewith, executed and delivered by it in pursuance of said votes to said International Trust Company as trustee for the bondholders, which mortgage is to be duly filed and recorded. Said mortgage is hereby referred to, and the terms thereof made a part of this obligation."   .   .   .

"This bond shall not be valid unless the certificate endorsed hereon shall have been signed by the trustee.

"In testimony whereof, the said Oriental Print Works Company has caused its corporate seal to be hereto affixed, and these presents to be signed in its name and behalf by its president and treasurer, and the coupons attached to be authenticated by a fac-simile of the signature of its treasurer, this first day of October, A. D. 1900.

"The War Revenue Tax hereon has been paid by stamps on said trust deed duly cancelled.

"ORENTAL PRINT WORKS COMPANY,
"    By

*Its President.*
*Its Treasurer.*

"TRUSTEE'S CERTIFICATE.

"This is to certify that this bond is one of the series described in the mortgage or deed of trust mentioned within.

INTERNATIONAL TRUST COMPANY,
"By

" *Secretary.*"

The appellant claims that his rights are to be determined by the laws of Massachusetts. As the bonds and coupons, which constitute the basis of his claim against the respondent, were executed, delivered to him, and were made payable in the State of Massachusetts, the contention of the appellant would appear to be correct. *Barrett* v. *Dodge,* 16 R. I. 740.

The appellant was a *bona fide* purchaser of the bonds, for the sum of $9,600.00, from Ferdinand A. Wyman, the treasurer of the Oriental Print Works Company, to whom the bonds had been delivered by the trustee under the trust mortgage deed, in accordance with the provisions of article 18 of said deed, before the maturity of the bonds, and several months before the appointment of the receiver of said company. He therefore obtained the bonds from their proper custodian.

But the receiver claims that a careful perusal of the bonds would have put the appellant upon his inquiry to ascertain whether or not they were being negotiated by the proper parties, and that the clause in the bonds referring to the mortgage gives the necessary notice.

Each bond contains the statement that it is executed and delivered in pursuance of the votes of the stockholders and directors of the company authorizing the issue of the bonds and of the mortgage therein mentioned. No invitation is extended to examine the records of the company for a verifica-

tion of this statement.  And payment of the bond and its coupons is secured by mortgage to be duly filed and recorded, which is referred to and made a part of the obligation.  No mention is made of the place or places where such record may be found.  It was evidently inserted as a means of identifying the bond as one covered by the mortgage.  The holder of the bond is invited to examine the mortgage to ascertain the details by which payment of the bond and its coupons is secured, and that is all.  It is not a warning to examine, before you purchase, in order that you may not be imposed upon by the officers of the company.

The only caution in the bond is contained in the following clause:

"This bond shall not be valid unless the certificate endorsed hereon shall have been signed by the trustee."

As the trustee's certificate was duly signed, the bond was *prima facie* valid.  But if the petitioner had examined the records he would have found copies of the aforementioned votes of the directors and stockholders of the company.  But he would not have been concerned with the first vote or its ratification in the second vote, because for the purposes of this case the only material words that need be considered are, "That the said president and treasurer be and they hereby are authorized and directed to cause to be made, issued, negotiated and delivered in the name of this company coupon bonds."  In fact, the only things that the receiver claims have been done without authority are the negotiation and delivery of the bonds.  Assuming that it was the duty of the appellant to have ascertained the fact; admitting that ignorance of the fact does not excuse him; charging him with knowledge of the vote, how is he affected by it?  He knows, in such case, that the president and treasurer are authorized and directed to cause to be negotiated and delivered, in the name of the company, coupon bonds.  The vote is silent as to the mode in which they shall act.  The acts of negotiation and delivery are often performed by agents, in which case the authority of the agent would have to be ascertained.  It is claimed by the receiver that the authority conferred upon these officers was joint, and

must be exercised jointly. That does not mean that they must both be physically present at every negotiation and delivery. It does not mean, even, that, in case of the employment of a broker to do their negotiating, and to deliver the bonds, both must actually be there. It could be done by one with the assent of the other, and that assent could be proved as a fact in the usual manner. But in this case these officers had executed these obligations, had taken them to the trustee for verification and certificate, the trustee had certified the bonds, and they were all in its custody until the delivery of the mortgage trust deed to it, when fifty bonds were delivered by the trustee to the treasurer, under the terms of the mortgage; they were not delivered to the president and treasurer, but to the treasurer. If the corporation had desired to protect itself against the negotiation and sale by the treasurer alone, it could easily have done so by providing for the delivery of the bonds by the trustee to both president and treasurer. If any harm has come to the company, it is on account of its own lack of precaution, or negligence; and in case of loss the loss should fall upon the party who allowed the paper to be issued rather than upon the innocent purchaser. *Putnam's Sons* v. *MacLeod,* 23 R. I. 373, 377. But it does not appear that there has been any loss to the company. It is true that Wyman, the treasurer, kept the $9,600.00, and did not charge himself with that amount on the books of the company; however, he claims to be a creditor of the company in these proceedings to the amount of $14,401.36, of which over $13,000.00 is for advances made to the company. If this account is correct, and no claim has been made to the contrary, the company would still be indebted to him if the $9,600.00 should be charged against him.

We therefore find that the sale of the bonds was authorized by the corporation.

(3) The receiver claims that the appellant, by reason of the agreement made by him with Wyman, becomes so connected with Wyman's fraud that he can not be said to come into court with clean hands.

The appellant argues that the liability of Wyman to him was that arising from deceit in the sale of the bonds, a liability ex-

isting before and irrespective of the agreement between them; and that the agreement did not contemplate the extinguishment or reduction of the corporation's liability on the bonds, but expressly provided for keeping it alive; that even in bankruptcy, security given by a third party does not affect the rights of a creditor; and that in equity this is true, even where the security was given by the debtor.

The first proposition is maintained by the following cases: *Commercial National Bank* v. *Clarke,* 180 Mass. 249; *Mercantile Guaranty Co.* v. *Hilton,* 191 Mass. 141; *Hale* v. *Leatherbee,* 175 Mass. 547. And the second is supported by the cases of *Allen* v. *Danielson,* 15 R. I. 480, and *Merrill National Bank* v. *Jacksonville,* 173 U. S. 131.

We find nothing in the appellant's agreement with Wyman to prevent his proceeding upon his petition in this cause.

Our conclusion is that the appellant is entitled to the relief prayed for; therefore the decree of the Superior Court is reversed and the cause is remanded to the Superior Court with directions to enter a decree admitting the petitioner as a preferred creditor of said Oriental Print Works Company for the amount now in the hands of the receiver produced by the sale of the property covered by the trust mortgage aforesaid, and as an unsecured creditor for the balance of his claim on said bonds, and that the money derived from the sale of the property covered by said mortgage may be paid to him.

*Edwards & Angell, and Storey, Thorndike, Palmer & Thayer,* for appellant J. Milton Tenney.

*Albert Gerald, and Ezra R. Thayer,* of counsel.

*Comstock & Canning, and Patrick P. Curran,* for receiver.