145 N.J. Super. 456 (1976)
368 A.2d 375
ALLIED TEXTILE PRINTERS CORP., RESPONDENT,
v.
DIRECTOR, DIVISION OF TAXATION, APPELLANT. ALLIED TEXTILE PRINTERS CORP., APPELLANT,
v.
DIRECTOR, DIVISION OF TAXATION, RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued December 7, 1976.
Decided December 23, 1976.
*458 Before Judges HALPERN, BOTTER and KOLOVSKY.
Mr. Harry Haushalter, Deputy Attorney General, argued the cause for the Director, Division of Taxation (Mr. William F. Hyland, Attorney General, attorney).
Mr. Samuel D. Bornstein argued the cause for Allied Textile Printers Corp. (Messrs. Shavick, Stern, Schotz, Steiger & Croland, attorneys).
The opinion of the court was delivered by KOLOVSKY, J.A.D., Retired and Temporarily Assigned on Recall.
Allied Textile Printers Corp. (Allied) appealed to the Division of Tax Appeals from assessments for sales taxes and business personal property taxes made by the Director of the Division of Taxation (Director). After a hearing, the Division of Tax Appeals adjudged that:
1. The engraving process performed upon [Allied's] copper rollers constitutes an "imprinting" service properly taxable under N.J.S.A. 54:32B-3(b)(1) of the New Jersey Sales and Use Tax Act and that the Director's assessment of sales taxes, penalties and interest in the amount of $44,821.79 is proper and affirmed.
2. [Allied's] copper rollers utilized in the printing of textiles do not constitute personal property used in business within the meaning of the New Jersey Business Personal Property Tax Act, N.J.S.A. 54:11A-1 et seq., and, therefore, the assessment by the Director of the Division of Taxation of business personal property taxes, penalties and interest in the amount of $23,622.82 is reversed.
In the above two appeals, consolidated for argument, the Director challenges the vacation of the business personal property tax assessment and Allied challenges the affirmance of the assessment for sales taxes.
The proofs adduced before the Division of Tax Appeals consisted only of the testimony of Allied's treasurer and three exhibits offered into evidence by the Director.
The proofs showed that Allied is in the business of printing and dyeing textiles for customers. The printing is accomplished by inserting unprinted fabric into a printing machine between the blade constituting the central cylinder *459 of the machine and a copper roller, theretofore engraved with a pattern or design, to which ink, a colored dye, has been applied by a furnishing roller. The pressure between the two rollers causes the ink to be transferred from the engraved surface of the copper roller onto the fabric in the patterned design.
The copper rollers are large cylindrical pieces of solid copper, weighing approximately 150 pounds, varying in length from 4 feet to 5 feet and in circumference from 14 1/2 to 20 inches, with "a large cylindrical hole down the center."
Before being used in the printing operation, the surface of the roller is engraved with the design or pattern desired by Allied's customer. The engraving operation, performed by an engraver engaged by Allied, is a complicated procedure that results in the engraving on the copper roller of the desired design, with the surface of the roller being chromeplated and polished to produce a smooth, mirror-like surface.
The copper roller is then "pressed with hydraulic equipment * * * under many tons of pressure" onto a steel mandrel and inserted, with the supporting mandrel, into a printing machine, "a complex piece of equipment that is permanently in place * * * and is composed of iron and steel." However, the machine can be used for printing only after the engraved copper roller has been inserted therein.
Once the desired quantity of fabric has been printed, the copper roller and mandrel are removed from the printing machine, the mandrel is removed from the roller by means of a hydraulic press and the roller is stored for later use either for imprinting the same design, if there is a re-order, or for re-engraving and printing of a new design.
Since only the outer circumference of the copper roller is engraved, each roller contains sufficient layers of copper to permit from 5 to 12 engravings to be impressed thereon. When an engraved design on a roller is no longer useful, the engraved surface layer of the roller is removed or "turned off" by means of a cutting tool so that another design can *460 be impressed upon the newly-revealed surface. The removal of a layer of copper reduces the circumference of the roller by approximately 1/8 of an inch.
According to Allied's witness:
[The useful life of a copper roller] varies quite a lot. It depends on how  on the size of the copper roller, how often we assign it to a pattern, how frequently it is turned off, and reengraved. We could conceivably go through a roller with five engravings in two and a half years, possibly two, and it is not uncommon for us to have some rollers for more than ten years, 20 years.
Once the utility of a copper roller has been spent and all of its layers have been removed by previous engraving operations, it is sold by Allied for scrap.
The copper roller is and always remains the property of Allied. Allied takes depreciation deduction on the rollers in the federal income tax and New Jersey corporation business tax returns filed by it. "The depreciation is calculated by [Allied's] accountants based on the cost of the copper roller."
The issue presented on the Director's appeal involves the interpretation and application of the definition of "personal property used in business," set forth in the Business Personal Property Tax Act, N.J.S.A. 54:11A-1 et seq.
In pertinent part, N.J.S.A. 54:11A-2 reads as follows:
For the purposes of this act, unless the context otherwise requires:
* * * * * * * *
(b) "Personal property used in business" shall mean tangible goods and chattels used or held for use in any business, transaction, activity or occupation conducted for profit, but shall not include:
(1) goods and chattels held as inventory, including raw materials, finished and partially finished products of manufacturers and processors, supplies and materials used or consumed in production, small tools, and goods and chattels held for sale, resale, leasing or to be furnished under contracts of service;
* * * * * * * *
The Division of Tax Appeals ruled that while the copper rolls were neither inventory, raw materials nor small tools, *461 they were within the exemption granted to "supplies and materials used or consumed in production," its opinion concluding as follows:
I place no significance [sic] whatsoever to the fact that these particular rollers are a depreciable item in the eyes of the Internal Revenue Service. With the exception of size, which has overly impressed the New Jersey taxing authority, I find no distinction between the engraved copper rollers used to place a printed pattern on cloth to any of these items: A spool of thread, the bobbin employed in a sewing machine, the shuttlecock employed in the loom, the typewriter ribbon employed in the office, the stencil cut for the duplicating machine and the cylindrical paper roller (with the center cord affixed on a steel mandrel by manual rather than hydraulic pressure) used in the copying machine.
However, we conclude that neither the record nor the statute supports the determination made by the Division of Tax Appeals.
In approaching the question of what the Legislature meant by its use of the phrase "supplies and materials used or consumed in production," we start with the rule that statutes granting exemption from taxation "are most strongly construed against those claiming exemption." Bloomfield v. Academy of Medicine of N.J., 47 N.J. 358, 363 (1966); see also, Mal Bros. v. Director, Div. of Taxation, 124 N.J. Super. 55, 61 (App. Div. 1973), certif. den. 63 N.J. 554 (1973).
We are satisfied that the legislative intent in excluding from taxation "supplies and materials used or consumed in production" was to exempt only items which will be consumed or rendered unfit for further practical use within a relatively short time in the normal course of the production operation in which the business is engaged. See Bonnar-Vawter, Inc. v. Johnson, 157 Me. 380, 173 A.2d 141, 147 (Sup. Jud. Ct. 1961); cf. Midwestern Press, Inc. v. Comm'r of Taxation, 295 Minn. 59, 203 N.W.2d 344 (Sup. Ct. 1972).
The items referred to in the Division judge's opinion  thread, bobbins, shuttlecocks, typewriter ribbons, stencils *462 and cylindrical paper rollers  as well as those referred to in the applicable administrative regulation, N.J.A.C. 18:9-3.3, are items of that kind. But copper rollers of the physical character here involved, that form a large and integral part of the operating printing machine,[1] rollers whose useful life may extend up to 20 years and are treated by the taxpayer as depreciable capital items, may not be deemed to be "supplies and materials consumed in production" merely because, after continued use for many years, they will have no further practical utility.
On Allied's appeal, it attacks both the factual findings and the legal conclusions of the Division of Tax Appeals leading to the affirmance of the sales tax assessment. We find no basis for reversal and affirm substantially for the reasons given in the opinion filed by the Division judge. His factual findings are supported by substantial evidence present in the record.
So much of the judgment of the Division of Tax Appeals as affirmed the Director's assessment of sales taxes is affirmed. So much of that judgment as set aside the Director's assessment of business personal property taxes is reversed.
NOTES
[1] Indeed, it is doubtful, although we need not here decide the question, that the copper rollers are "supplies and materials." Rather they would appear to be machinery or equipment. Cf. Mal Bros. v. Director, of Div. of Taxation, supra.

The view expressed by Allied's treasurer that the printing machine consists only of the steel and iron unit into which the copper roller is inserted is unpersuasive. The steel and iron structure, without the copper rolls, cannot do any printing. The copper roll, unoperable by hand and constructed only for use in the steel and iron structure, would appear to become a substantial and clearly integral part of the printing machine once it is inserted in the steel and iron unit. Cf. Doty v. Oriental Print Works Co., 28 R.I. 372, 67 A. 586 (Sup. Ct. 1907).