PUBLIC SERVICE CO-ORDINATED TRANSPORT, PROSECUTOR, v. STATE BOARD OF TAX APPEALS, STATE TAX DEPARTMENT AND J. H. THAYER-MARTIN, STATE TAX COMMISSIONER, DEFENDANTS.

Argued January 17, 1935—Decided April 30, 1935.

98

Before Justices HEHER and PERSKIE.

For the prosecutor, *William H. Speer.*

For the respondent, *David T. Wilentz,* attorney-general.

The opinion of the court was delivered by

HEHER, J.   Prosecutor challenges an assessment of a gasoline sales tax levied against it by the state tax commissioner

under the provisions of the Motor Vehicle Fuel Sales Tax act, for gasoline claimed to have been used by it in the operation, during the month of May, 1934, of auto buses through the town of Nutley, on its Newark-Clifton bus route. *Pamph. L.* 1927, *p.* 782, as amended by chapter 357 of the laws of 1931, page 875. The state board of tax appeals sustained the assessment. The sole question presented for determination is the applicability of this Fuel Sales Tax act.

The bus line in question is wholly intrastate in character, and is operated under the provisions of chapter 144 of the laws of 1926, known as the "Kates Auto Bus act." *Pamph. L.* 1926, *p.* 219. This statute provides (section 2) that:

"Whenever the route of any auto bus extends through more than two municipalities and one or more municipalities have granted consent for such operation and the board of public utility commissioners has approved such consent and one or more municipalities have refused or failed to grant the necessary consent, in such case the board of public utility commissioners may permit the holder of such consent so granted and approved to run his auto bus through the municipality or municipalities which have refused or failed to grant the necessary consent; *provided,* that no passengers be either taken on or discharged from said auto bus anywhere within the boundaries of the municipality or municipalities so refusing or failing to grant such consent; *and provided, further,* that nothing herein contained shall be held to entitle any such municipality which has refused or failed to grant such consent, to any proportion of the five per centum franchise tax herein imposed."

The town of Nutley withheld its consent to the operation of buses on this route within its corporate limits. The board of public utility commissioners approved the consents given by the other affected municipalities; and it also granted permission for the operation of the line through Nutley. In obedience to the command of the statute, no passengers were received or discharged within the confines of that municipality; and no part of the franchise tax imposed by section 3 of the act was paid to it. This section obliges the bus

operator to pay, in such a situation, to the consenting municipality a franchise tax of "five (5) per centum of such proportion of the gross receipts as the length of the route in the municipality bears to the whole length of such route." Prosecutor paid to each assenting municipality along the route its proportionate share of the gross receipts; but, as found by the board of tax appeals, "no tax was paid upon its gross receipts apportioned to the length of the route extending through "Nutley, and, therefore, the total municipal franchise tax paid did not equal five per cent. of its total gross receipts. The board found as a fact that one thousand twenty-five gallons of gasoline were consumed in the operation of prosecutor's buses through Nutley; and it is conceded that no motor fuel tax was paid upon the gasoline thus used. The board held that "the Auto Bus act applies to vehicles which indiscriminately accept and discharge passengers at the termini or points along the route," and that, inasmuch as the prosecutor "is not permitted to accept or discharge passengers in the town of Nutley, * * * its vehicles are not operating there as auto buses, and it is subject to motor fuel tax upon the gasoline consumed over the portion of its route extending through the town."

The essential question therefore is one of statutory construction. Has the legislature evinced a purpose to make the provisions of the Motor Fuel Tax act applicable to buses so operating through a municipality withholding its consent to the transaction of local business? We think not.

Section 1 of the Motor Fuel Tax act of 1931, *supra,* excludes from the statutory class subject to the payment of the motor fuel tax the operators of "auto buses, commonly called jitneys, which now pay a municipal or franchis tax on their gross receipts." This exclusion is absolute and unconditional; it is not qualified in any sense. And prosecutor is indubitably within the exempted class. It pays a franchise tax to the municipalities which have consented to the transaction of its business within the municipal confines. A legislative purpose to give the prosecutor, in the operation of this bus line, a double classification, *i. e.,* within the exempt class

as to the municipalities to which such a franchise tax is paid and without it as to those withholding consent to do a local business, will not be implied; it must be explicitly declared.

In seeking for the legislative purpose, the objects sought to be accomplished are to be considered. Is there such a relation between the purposes to which these taxes are to be devoted as to evince the legislative purpose which the defendants say is clearly implied in the pertinent language of the Motor Fuel Tax act, *supra?* We do not think so. Paragraph 3 of the Auto Bus act of 1926, *supra,* provides for the direct payment of the franchise tax to the chief fiscal officer of the municipality, "as a monthly franchise tax for revenue for the use of the streets." The moneys derived from the assessment of the motor fuel tax are paid, through the medium of the state tax commissioner, to the state treasurer, for distribution by him to the following agencies, and for the following purposes, viz.: (a) To the board of public utility commissioners, $2,000,000 per annum, "to be used by it to defray the public share of the cost of eliminating grade crossings;" (b) to "defray the expense of the state tax department" in administering the statute; (c) to the department of commerce and navigation, the sum of $90,000, "to be used for the construction, reconstruction and maintenance and improvement of the inland waterways;" and (d) to the state highway commission, the remainder of said moneys, "to be used for the construction of roads and bridges, included in the state highway system." *Pamph. L.* 1931, *p.* 879, § 8; *N. J. Stat. Serv.* 1931. 208-588. Section 8-a provides that from the sum remaining for the use of the state highway commission, as provided in section 8, there shall be set aside the sum of $5,000,000, "to be expended for the control of traffic and the repair and improvement of streets, which sum shall be turned over in quarterly payments to the several counties in the state in proportion" to the ratables. The county collector is directed to distribute this fund to the several municipalities within the county in proportion to its tax ratables. In the one case the franchise tax is a direct payment to the municipality "for revenue for the use of the streets;" in the

other, a sales tax is imposed for special public purposes, and if a surplus remains after satisfying the statutory appropriations, a specified portion goes to the municipalities for "the control of traffic and the repair and improvement of streets," without regard to the use thereof by the operators of vehicles consuming the taxed fuel.

To all seeming, the legislative purpose was to impose upon the bus operator the obligation of paying the prescribed portion of its gross receipts only to the municipalities which shall consent to the transaction of business within their borders. The municipalities withholding consent are manifestly not entitled to such revenue for the use of their streets. They are, however, entitled to their share of the fund created by the motor fuel sales tax; but so are the municipalities of the other class. Nor is the fact that the utility will not pay a franchise tax totaling five per cent. of its gross receipts, where consent is withheld by one or more municipalities along the route, of any significance in the construction of the exemption clause of the Motor Fuel Sales Tax act. The utility is obliged to pay only the tax imposed by the Auto Bus act. If the legislative design was to qualify the exemption, the purpose was not expressed. It is an absolute and unconditional exemption of all buses required to pay, under the provisions of the Auto Bus act, "a municipal or franchise tax on their gross receipts." Prosecutor is within the exempted class, and is therefore not subject to the motor fuel sales tax. The franchise tax imposed by the Auto Bus act is not five per cent. of the total gross receipts, unless the route is wholly within one municipality; where it extends beyond the confines of a municipality it is five per cent. of such proportion of the gross receipts as the length of the route in the municipality bears to the whole length of such route.

There is a manifest lack of logic in the conclusion.of the state board that such an auto bus is not operating under the provisions of the Auto Bus act in the municipality withholding its consent; and that the legislature "did not intend that the gasoline consumed by auto buses operating in the several municipalities in the state should be exempt from

the motor fuel tax because the owner paid a municipal franchise tax in one or more of the municipalities, unless the owner paid the tax to all the municipalities through which the route extended." No such legislative purpose is expressed; nor is it fairly to be implied.

In an attempt at demonstration of the claimed unfairness of the construction contended for by prosecutor, the state board points to the case of a route with termini at distant points in the state, and no intermediate stop; but this merely argues that the act exhibits a *casus omissus* which the courts cannot supply. It should be observed, in this connection, that section 1 of the Auto Bus act of 1926, *supra,* defines an "auto bus" as a passenger-carrying automobile or motor bus which "indiscriminately accepts and discharges such persons as may offer themselves for transportation *either at the termini or points along the way or route* on which it is used or operated or may be running." Even though it does no business in Nutley, it is still an auto bus within the intendment of this statute and the exemption clause of the Motor Fuel Tax act of 1931, *supra.* Such auto buses are clearly within the letter of the act of 1931; and we find no provisions therein justifying the conclusion that they are not within its spirit. Such buses do not have one character in Nutley and another outside. The underlying theory of the Auto Bus act seems to be to impose a franchise tax upon the gross receipts that is relatively just and equitable for the business done in the municipality to which it is paid.

Where the words of a legislative enactment are plain and unambiguous, and are not rendered dubious by the context, they cannot be controlled by judicial construction. The duty of the court is to give a natural and literal sense to the words used. There is, in such a situation, no occasion for construction. *Douglass* v. *Chosen Freeholders of Essex Co.,* 38 *N. J. L.* 214; *Water Commissioners* v. *Brewster,* 42 *Id.* 125; *In re City of Passaic,* 94 *Id.* 384; *United States* v. *Missouri Pacific Railroad Co.,* 278 *U. S.* 269; 49 *S. Ct.* 133; 73 *L. Ed.* 322. As was said by Chief Justice Beasley, in *Douglass* v. *Chosen Freeholders of Essex Co., supra*: "Where that which

is directed to be done is within the sphere of legislation, and the terms used clearly express the intent, all reasoning derived from the supposed inconvenience, or even absurdity of the result, is out of place. It is no province of the courts to supervise legislation, and keep it within the bounds of propriety and common sense, so that even if in this case it could be demonstrated that the regulation in question was incommodious, or even hurtful, an appeal for relief to the judicial power would be utterly in vain." In *United States* v. *Missouri Pacific Railroad Co., supra,* Mr. Justice Butler said: "The language of that provision is so clear and its meaning so plain that no difficulty attends its construction in this case. Adherence to its terms leads to nothing impossible or plainly unreasonable. We are therefore bound by the words employed, and are not at liberty to conjure up conditions to raise doubts in order that resort may be had to construction. It is elementary that where no ambiguity exists there is no room for construction. Inconvenience or hardships, if any, that result from following the statute as written, must be relieved by legislation." Where the language employed is not of doubtful meaning, it will not be controlled, or given a forced or strained construction, in order to effectuate what the courts may conceive to be the unexpressed intention of the legislature. That intention is to be found primarily in the language employed.

The state maintains that prosecutor is seeking an "exemption" from taxation, and invokes the rule that an exemption statute is to be strictly construed. This would seem to be rather the express exclusion of a class that is otherwise taxed; and, in that situation, prosecutor may well invoke the elementary rule that a tax cannot be imposed upon an individual unless he is explicitly brought within the terms of the taxing act. Such statutes are strictly construed. The legislative body must express its intention to tax in distinct and unambiguous language. The provisions of a statute levying taxes will not be extended, by implication, beyond the clear import of the language employed, nor its scope and operation enlarged so as to embrace matters not specifically mentioned.

In case of doubt, such a statute is construed most strongly against the government, and in favor of the citizen. *Gould* v. *Gould,* 245 *U. S.* 151; 38 *S. Ct.* 53; 62 *L. Ed.* 211. But even though it be viewed as an exemption, the rule of strict construction does not justify a disregard of the plain letter of the statute, or the inclusion therein of a provision that is not fairly to be implied. The rule has no application unless there be ambiguity in the words employed to express the legislative purpose. And it does not call for a strained construction. It results that the tribunal below rested the tax levy in question upon a misinterpretation of the statute imposing the motor fuel tax; and the judgment was therefore erroneous.

Judgment reversed.