STATE BOARD OF TAX APPEALS.

Appeals of 1937 and 1938.

WRIGHT AERONAUTICAL CORPORATION, PETITIONER, v. J. H. THAYER MARTIN, STATE TAX COMMISSIONER, RESPONDENT.

Appeals of 1937 and 1938.

LEHN & FINK PRODUCTS CORPORATION, PETITIONER, v. J. H. THAYER MARTIN, STATE TAX COMMISSIONER, RESPONDENT.

Decided April 15, 1941.

For the petitioners, *Russell E. Watson.*

For the respondent, *David T. Wilentz,* attorney-general (by *John Solan*).

QUINN, President. These appeals were submitted on stipulations of facts, and as they raise identical issues, are disposed of herewith together. They involve the legality of the method of computation employed by the State Tax Commissioner in assessing the foreign corporation franchise taxes due from these petitioners to the state for the years 1937 and

1938, under *Pamph. L.* 1937, *ch.* 25 (*R. S.* 54:32A-1 *et seq.;* *N. J. S. A.* 54:32A-1). The section of the act which we are presently called upon to construe is *R. S.* 54:32A-8; *N. J. S. A.* 54:32A-8, which, so far as is here material, is as follows:

"A tax is hereby imposed upon every foreign corporation organized for pecuniary profit, except those corporations specifically exempted by this chapter, for the privilege of exercising its franchise in this state or for the privilege of doing busines or maintaining an office in this state, which tax shall be measured by, and paid annually upon and with respect to, that proportion of the total capital stock issued and outstanding as of January first in each year as the gross income from the business done in this state in the same income year bears to the total gross income from its entire business in the income year."

The particular language disputed is "gross income from the business done in this state." Both petitioners maintain manufacturing plants in this state, and sell their product manufactured here to customers within as well as out of the state. The taxpayers made tax returns for the years in question, and paid taxes, upon the basis of a construction of the mooted phrase quoted, which limited it to gross receipts from sales to customers having places of business within the state. The Commissioner audited the returns and assessed additional taxes to the petitioners, proceeding upon a computation of the tax, based upon a construction of the statutory language in question to include within "gross income from the business done in this state," so much of the selling price of goods manufactured here, but sold out of the state, as represented the manufacturing cost thereof, comprising cost of materials, labor, preparation of product for shipment, and an allocated proportion of overhead. It has been stipulated in both cases that if the inclusion of the cost of manufacturing in the Commissioner's formula referred to was improper under the act, the additional taxes should be set aside. No question is made as to the correctness of the amounts of tax originally returned by the taxpayers, under their construction of the statute, except that it is contended in the case of Wright

Aeronautical Corporation that it is unconstitutionally discriminated against, as a foreign manufacturing corporation having in excess of fifty per cent. of its capital employed in manufacturing in this state, by the assessment of any franchise tax at all, in view of the statutory exemption from such taxes accorded to domestic corporation in such case. *R. S.* 54:13-7; *N. J. S. A.* 54:13-7. We will not undertake to pass upon the question of constitutionality in advance of a consideration thereof by the courts, but will assume the validity of the act as written.

At the outset, we think it should be observed that tax statutes should be construed, where possible, in consonance with the popular signification of the language used. *Evening Journal Association* v. *State Board of Assessors* (*Supreme Court,* 1885), 47 *N. J. L.* 36, 40. Construction not plainly dictated by the legislative language should be avoided, and a taxing statute, particularly (should there be any doubt attending its meaning), must be strictly construed against the state and in favor of the taxpayer. *Public Service Coordinated Transport* v. *State Board of Tax Appeals* (*Supreme Court,* 1935), 115 *Id.* 97; 178 *Atl. Rep.* 550; *McFeeley* v. *Commissioner* (*Supreme Court,* 1935), 296 *U. S.* 102; *Old Colony Railroad Co.* v. *Commissioner* (*Supreme Court,* 1931), 284 *Id.* 552.

But we do not regard the construction of the language in question as attended by any reasonable doubt. We think that the propounding of a proportion based upon the ratio of "gross income from business done in this state," to "total gross income from entire business," clearly signifies the proportion of receipts from intrastate sales and service to total receipts, and that the act as written is so understood invariably by the officers and fiscal agents of corporations liable to the payment of the taxes. Whether or not a wise public policy requires that the proportion of gross income from business done in this state be arranged to include some part of the out of state sales receipts, deemed allocable to the cost of manufacturing in this state, is beside the point. Apt legislative language could have determined such policy without possibility of question. In default thereof, the arbitrary imposi-

tion of any such formula by the State Tax Department is unauthorized by the statute. Nor can we regard as fairly tenable the department's contention that if it is in error in applying its "cost of manufacturing" formula, it is in any event justified in construing the phrase, "gross income from business done in this state," to contemplate, as included therein, some indeterminate proportion of gross out of state sales, subject to determination by the Commissioner, as a matter of fact in each case, upon the basis of his estimate of the extent to which such receipts could be shown to be derived from intrastate corporate activities other than sales. We cannot find that the legislature intended any such vague and unwieldy standard for computation of the tax, particularly where the language actually used by it possesses a definite and widely understood significance, easy and convenient of application.

The phrase "business done in this state," has been construed by the United States Supreme Court in *Pacific Express Co.* v. *Seibert* (1891), 142 *U. S.* 339 (at *p.* 350), as follows:

"This positive and oft-repeated limitation to business done within the state, that is, business begun and ended within the state, evidently intended to exclude, and the language employed certainly does exclude, the idea that the tax is to be imposed upon the interstate business of the company. 'Business done within this state' cannot be made to mean business done between that state and other states."

The phrase has been frequently construed in the same way, and never, so far as our research discloses, as contended for by respondent. Nor does respondent cite a solitary authority in support of its construction of the act. The argument of petitioners, however, is strongly supported by two recent cases construing an analogous Texas statute. The taxable ratio in that act provided for, is that which "gross receipts from its business done in Texas bear to the total gross receipts of the corporation from its entire business." In *Clark* v. *Atlantic Pipe Line Co.* (*Ct. Civ. Ap. Tex.*, 1939), 134 *S. W. Rep.* (2*d*) 322, there was in issue the construction of the act by the assessing officer of the state, under which "gross receipts from business done in Texas" was considered to

include receipts on account of shipments of oil made by the taxpayer, as a common carrier, destined to points out of the state. The court set aside that construction of the act, holding that receipts from "business done in Texas" meant "business begun and completed in Texas, not business begun in Texas and completed in some other state or foreign nation. In other words that it means intrastate business." Page 328. This decision is clearly in support of the position of the petitioners herein.

The converse of the position taken herein by petitioners was presented by the Texas authorities in applying the same statute as construed in the *Clark* case, in taxing the Ford Motor Company, a foreign corporation, in *Ford Motor Co.* v. *Clark* (*C. C. A., 5th,* 1938), 100 *Fed. Rep. (2d)* 515; *affirmed, Ford Motor Co.* v. *Beanchamp* (1939), 308 *U. S.* 331. In that case, the taxpayer, a Delaware corporation, was engaged in the manufacture of automobile parts in Michigan, some of which were shipped to an assembly plant in Texas, and there assembled into completed automobiles and sold to dealers in the State of Texas. The taxing officers determined the tax ratio by applying gross receipts from Texas sales to total sales receipts of the company. The company urged that there should not have been included in the numerator of the ratio fraction that portion of the Texas sales receipts represented by the cost of manufacturing the parts in Michigan and of shipping them to Texas, and that, as construed by the taxing officers, the statute offended both the interstate commerce clause and the Fourteenth Amendment to the United States Constitution. Both the Circuit Court and the Supreme Court held the act to have been properly construed by the state authorities, and valid as so construed. The Circuit Court stated (at *p.* 517) : "the object of the whole corporate enterprise is to make money. The corporation has made none by manufacture until it sells the product."

It was held that the entirety of the receipts from sales in Texas constituted "gross receipts from business done in Texas."

The Supreme Court, in affirming the Fifth Circuit, referred to the statute as based upon a calculation, "by the percentage

of sales which are within the state." The ruling is square authority in support of petitioners' position herein, although in a converse situation. We think that the intrastate sales factor must be determinative in all situations, uniformly, under the act, regardless of where the foreign corporation's manufacturing plant is located.

Another closely analogous problem was before the Supreme Judicial Court of Massachusetts in *Eaton Crane Pike Co.* v. *Commonwealth* (1922), 135 *N. E. Rep.* 170. The act there involved imposed an excise tax "upon the privilege of conducting intrastate business within our borders in the case of foreign corporations," and provided for a tax computed upon that portion of the net income of such corporations which is not derived from interstate or foreign commerce, or from business carried on, or property owned out of the commonwealth. The state attempted to tax that part of the net income arising from sales of goods manufactured within, but sold out of the state in interstate commerce, as represented the process of manufacture, that being contended to constitute an intrastate activity. The court sustained the taxpayer's plea for an abatement of the tax to the extent of its computation upon the basis of manufacturing cost of goods sold out of the state, as follows:

"It is contended that, in determining the net income derived from the sale of goods in interstate commerce, the entire proceeds from such sales cannot be made the basis of computation of the exemption. This contention if sustained would require the deduction of a part of income actually accruing because of processes happening before the movement of the goods, although the contracts of sale did not contemplate any such apportionment or furnish any measure for so doing. No such deduction in terms is made by the statute.

"If it is assumed that the goods were manufactured for sale without reference to the possibility that they might be sold without the state and that none of the attributes of interstate commerce attached thereto until their actual sale, nevertheless, under these statutes the income derived from such sales is not to be considered in whole or in part as income not derived from interstate or foreign commerce, although

largely affected by the conduct of the business as carried on within the commonwealth. * * * The statutes here in question provide no adequate machinery for the separation between the income justly attributable to intrastate manufacture and that attributable directly to interstate commerce. Since the income actually arises from interstate commerce, the law goes no further in differentiation for purpose of taxation."

What the Massachusetts court said about the significance of a failure of express statutory provision for machinery for the separation of income between that attributable to intrastate manufacture and that arising from interstate commerce, is directly in point in the cases *sub judice.*

Finally, we do not deem the statutory definitions contained in the act of any pertinence in the present connection. "Doing business" is broadly defined in comprehensive language for the purpose of fixing the class of corporations subject to the operation of the act. *R. S.* 54:32A-2; *N. J. S. A.* 54:32A-2. See *Gaines, Silvey & Nichols, Inc.,* v. *State Board of Tax Appeals (Supreme Court,* 1939), 122 *N. J. L.* 334; 5 *Atl. Rep.* (*2d*) 473; *affirmed,* 124 *N. J. L.* 128; 11 *Atl. Rep.* (*2d*) 28. "Gross income" is defined in such a manner as to prevent diminution thereof on any account, whether gross income from business done in the state, or total gross income. The definition is not directed to the issue of construction before us.

For the reasons stated, we are of the opinion that the assessments of additional taxes against these petitioners by the respondent were illegal, and judgments will be entered setting them aside.