STATE BOARD OF TAX APPEALS.

CITY OF JERSEY CITY ET AL. AND TOWN OF MONTCLAIR ET AL., PETITIONERS, v. J. H. THAYER MARTIN, STATE TAX COMMISSIONER, RESPONDENT.

Assessment of Public Service Electric and Gas Company.

CITY OF JERSEY CITY ET AL. AND TOWN OF MONTCLAIR ET AL., PETITIONERS, v. J. H. THAYER MARTIN, STATE TAX COMMISSIONER, RESPONDENT.

Assessment of New Jersey Bell Telephone Company.

TOWN OF DOVER, PETITIONER, v. J. H. THAYER MARTIN, STATE TAX COMMISSIONER, RESPONDENT.

Assessment of New Jersey Power and Light Company.

TOWNSHIP OF MILLBURN, PETITIONER, v. J. H. THAYER MARTIN, STATE TAX COMMISSIONER, RESPONDENT.

Assessment of Jersey Central Power and Light Company.

Decided June 9, 1942.

For the City of Jersey City et al., *Edward P. Stout.*

For the Town of Montclair, Township of Millburn and ninety other petitioner and respondent municipalities, *Herbert J. Hannoch* and *Morris Weinstein.*

For the Town of Dover, *Alfred J. Grosso.*

For Public Service Electric and Gas Company, *William H. Speer.*

For New Jersey Bell Telephone Company, *J. Henry Harrison, Leonard A. Sweney, Thomas Glynn Walker* and *Robert F. Darby.*

For Jersey Central Power and Light Company, *Autenrieth & Wortendyke.*

For New Jersey Power and Light Company, *Wall, Haight, Carey & Hartpence.*

QUINN, President. These appeals involve common questions of law and fact, and while the petitioners Jersey City and Hoboken tried their cases separately from those of the other municipalities, all of the relevant facts in all of the cases, as established by proof or stipulation, are agreed upon by the parties. It is thus convenient to dispose of the issues in the several cases in this single opinion.

The appeals concerning the utilities named, other than the New Jersey Bell Telephone Company, involve the construction of *Pamph. L.* 1940, *ch.* 5, while those affecting that company pertain to *Pamph. L.* 1940, *ch.* 4. These are the most recent general revisions of the so-called Gross Receipts Franchise Tax Acts. The issues in these appeals arise out of a dispute with respect to the respective formulas provided by these statutes for the calculation of the taxes payable.

Section 6 (a) of chapter 5 provides for the payment of:

"(a) a tax computed at the rate of five per centum (5%) of such proportion of the gross receipts of such taxpayer for

the preceding calendar year as the length of the lines or mains in this state, located along, in or over any public street, highway, road or other public place bears to the whole length of its lines or mains."

Section 3 of chapter 4 provides for a substantially similar tax formula. The respective references to "the length of the lines or mains," &c., are identical, and the issue herein is as to the true meaning of that phrase. Predecessor statutes since *Pamph. L.* 1927, *ch.* 302, have been similarly phrased. All of the utilities concerned, whether power, light or gas companies, under chapter 5, or telephone and water companies, under chapter 4, commonly distribute their product by means of main lines, cables and pipes in the streets and highways, and by means of service connections from such lines in the streets to the premises of the consumers. The connections are called "drop wires" in telephone utility parlance, and "service connections," "service pipes" or "services" in that of the light, power and gas companies, and also with respect to water companies. (None of these are here involved, but all will be affected by the determination.) We refer to all generically as service connections, for purposes of this opinion. The question before us for determination in all of these cases is as to whether the utilities respondents herein improperly, as claimed by the municipalities, included the lengths of these service connections as part of the lengths of their "lines and mains" for purposes of computation of the tax.

The inclusion of the service connections operated to decrease the amount of the tax, because of the fact that generally a much larger part of each of the service connections is situated on private property than upon the public streets, &c. The effect of such inclusion, therefore, is to increase the denominator of the statutory fraction of the gross receipts made taxable under the acts, by a number proportionately greater than that by which the numerator is thus increased, and of course the taxable fraction or proportion of the gross receipts thereby becomes smaller.

In the past there has been no general uniformity in the construction of the statute by the utilities and by the State Tax Department. The form of return prepared by the depart-

ment requires the utilities to state the lengths of their lines or mains in blank spaces, under which is printed the legend, "pole line or trench length." This is clearly indicative that the department did not regard the inclusion of service connections as called for by the statute. Since 1928, however, some of the companies, like the telephone company, have consistently included them in their returns. There is nothing to indicate that the State Tax Commissioner knew of that practice of this company, since nothing on the face of the returns would indicate it, and the facilities of the department do not permit of the difficult and well-night impossible task of checking the returns for mileage annually. The present litigation arose out of the circumstance that the Public Service Company, which had always, prior to 1940, excluded the service connections in computing their mileage, in that year included them. The discrepancy thus appearing, resulting in a substantial decrease of tax payable, revealed the situation to the municipalities, which are the statutory recipients of the taxes. Combining, they succeeded in inducing the legislature to amend the statutes, so that, commencing with the year 1941, it was specifically provided that the length of the lines and mains should be determined without the inclusion of the service connections. *Pamph. L.* 1941, *chs.* 20 and 21. Both of these enactments recited that the amendments of the laws therein provided for were "in clarification of existing law and declaratory thereof." At the same time, these appeals were filed so as to correct the error which the municipalities conceived to have been made in the assessments of the respondent utilities for the year 1940.

Many rules of statutory construction have been mooted by the parties upon the argument of these cases. Some of these rules are relied upon both by the utilities and the municipalities. We think none of them are here applicable, except the one which holds that where statutory language is plain and clear it is not subject to control by judicial construction. *Public Service Co-ordinated Transport* v. *State Board of Tax Appeals (Supreme Court,* 1935), 115 *N. J. L.* 97; 178 *Atl. Rep.* 550. These statutes refer to "lines or mains." While some doubt might attend the word "lines," were it alone,

there cannot be the slightest question but that the word "mains" means only, as the word itself signifies, the main or principal conduits by which gas and water are distributed by gas and water companies. It does not mean the service pipes connecting the mains with the consumer's premises. The plain understanding of the word "mains" in this sense by the public at large is proven by the municipalities to be that likewise universally entertained by experts and engineers associated with the utility industry. This being established as to the word, "mains," it is obvious that a similar construction must be accorded to the word "lines," inserted in the statute to cover utilities which transmit their product by wires and cables, i. e., power, light and telephone companies. There is no reason to suppose that the legislature, after plainly *excluding* the computation of service pipes, by the use of the word "mains," in the case of gas and water companies, would have intended to *include* service connections or drop wires in the case of the other companies. Every dictate of fairness and uniformity would compel a conclusion to the contrary. In short, the collocation of the words, "lines" and "mains," in the phrase "lines or mains," in the light of the context, calls for the conclusion, as a matter of English, that the words were used in the same sense. *Noscitur a sociis. State v. Murzda (Court of Errors and Appeals,* 1936), 116 *N. J. L.* 219, 224; 183 *Atl. Rep.* 305.

We have carefully considered the several arguments presented on behalf of the utilities, and conclude that nothing shown militates against the conclusive force of the plain language of the statutes. It follows that the assessments must be set aside, to the end that recomputations of the statutory proportion or fraction be made, excluding from the mileage any service connections, services, service pipes or drop wires. The determination of the tax becomes a matter of mere calculation, as the figures for service connections, as well as for gross receipts, are proven or stipulated. Upon concurrence by counsel, judgments may be submitted for entry in all cases in conformance with the determination herein.

So ordered.