LASSER, P.J.T.C.
Taxpayer appeals from a sales and use tax deficiency assessment of the Taxation Division Director in the amount of $461,-528.64, plus interest, for the period January 1, 1969 through December 31, 1981. At issue is whether charges for the repair and maintenance of cargo containers are exempt from the provisions of the Sales and Use Tax Act, N.J.S.A. 54:32B-1 et seq. The case was submitted to the court for decision based on stipulated facts.
Taxpayer is a German corporation headquartered in Hamburg, West Germany. Taxpayer’s operations include the international transport of containerized cargo by ship. Container ships are specially designed to transport cargo in 20-foot or 40-foot long steel or aluminum containers. The containers have corner fittings and locking devices to enable them to be stacked on board ship without the risk of shifting during the voyage. Since the cargo in the stacked container is protected, the ship is designed without ‘tween decks. “ ‘Tween decks” divide the hold of a conventional (break-bulk) cargo ship into horizontal compartments to protect cargo from being crushed by cargo above it. ■
Container shipping is more efficient and economical than break-bulk shipping. Handling costs are reduced because the containers can be quickly and easily transferred between container ships and specially designed motor carriers or railway cars. Containers provide an efficient means of transporting cargo both on land and at sea.
*111 From 1969 to 1981, taxpayer contracted with New Jersey companies to repair and maintain its containers and chassis, and paid the cost of labor and parts for these services. Based on a November 15, 1968 opinion letter from its accountant, taxpayer filed no New Jersey sales and use tax returns and paid no New Jersey sales and use tax from 1969 through 1981 with respect to parts and repair services for its cargo containers and chassis. For the same period, the companies performing these services filed New Jersey sales and use tax returns listing their gross receipts and the amount of receipts claimed to be exempt from the sales and use tax. Receipts for container and chassis repair services performed for taxpayer were included in the deductions, although not specifically identified as such.
As a result of audits of the records of the container and chassis repair companies, the Division of Taxation made an assessment of $461,528.64, plus interest, for unpaid sales and use tax for the period 1969 through 1981. The assessment pertained to repair and maintenance services rendered to taxpayer by New Jersey vendors.[1]
Taxpayer makes three arguments. First, taxpayer contends that the assessment for the period prior to September 30, 1979 is barred by the three-year statute of limitations contained in N.J.S.A. 54:32B-27(b) that says:
[EJxeepl in the ease of a willfully false or fraudulent return with intent to evade the tax, no assessment of additional tax shall be made after the expiration of more than three years from the date of the filing of a return; provided, however, that where no return has been filed as provided by law the tax may be assessed at any time.
Taxpayer asserts that while it did not file any sales or use tax returns for the period in issue, its vendors did, and the “no return” exception applies only where neither the vendor nor the vendee has filed a return.
*112 Taxpayer’s second argument is that its payments for container repair and maintenance services are exempt from the sales and use tax pursuant to N.J.S.A. 54:32B-8.12 which, prior to its amendment in 1980, provided that:
Receipts from sales, repairs, alterations, or conversion of commercial ships, barges and other vessels of 50-ton burden or over, primarily engaged in intra-state or foreign commerce ... and property used by or for ... maintenance and repairs (other than articles purchased for the original equipping of a new ship) are exempt from the tax imposed under the Sales and Use Tax Act.
Taxpayer argues that containers are an integral part of container ships, and therefore fall within the above quoted exemption from tax for the repair of commercial ships. Taxpayer contends that the 1980 amendment of § 8.12, which expressly exempts cargo containers, merely clarified a previously existing exemption. The exemption, as amended in 1980, states:
Receipts from sales or charges for repairs, alterations or conversions of commercial ships or any component thereof including cargo containers of any type whatsoever ... are exempt from the tax imposed under the Sales and Use Tax Act. [amended language underscored]
Finally, taxpayer argues that the Director’s assessment violates the Commerce Clause of the United States Constitution, U.S. Const, Art. I, § 8, cl. 3, in accordance with the principles set forth in Japan Line Ltd. v. County of Los Angeles, 441 U.S. 434, 99 S.Ct 1813, 60 L.Ed.2d 336 (1979).
The Director contends that taxpayer is not protected by the three-year statute of limitations in N.J.S.A. 54:32B-27(b) because, despite the filing of returns by taxpayer’s vendors, taxpayer was liable for sales tax and was also required to file a return. Next, the Director argues that the exemption for the repair of commercial ships in N.J.S.A. 54:32B-8.12 does not extend to cargo containers, and he states that no such exemption for cargo containers, either express or implied, existed prior to the 1980 amendment of the statute. According to the Director, the Legislature’s acquiescence in his interpretation that the § 8.12 exemption does not extend to cargo containers is evidence that the Legislature intended containers to be subject to sales tax. The Director argues that the 1980 amendment providing for exemption of cargo containers was a change in the law rather than a clarification of a previously intended *113 exemption. He maintains that containers are not integral parts of container ships, but instead have a function and identity distinct and independent from the ships. Finally, he contends that the assessment does not create a risk of multiple foreign taxation or impair the federal regulatory power, and therefore does not violate Commerce Clause principles.
The Statute of Limitations Issue
Section 27 of the Sales and Use Tax Act, which concerns the statute of limitations governing actions by the Director to collect taxes due, states that “where no return has been filed, the tax may be assessed at any time.” N.J.S.A. 54:32B-27(b). Taxpayer urges that the court interpret the words “no return has been filed” to mean that no return has been filed by either the vendor or vendee. Since taxpayer’s vendors filed sales tax returns, taxpayer contends that the Director is subject to the general three-year statute of limitations set forth in N.J.S.A. 54:32B-27(b). The language of the Sales and Use Tax Act in §§ 14(b), 17(a) and 22(a) causes me to reject taxpayer’s construction of § 27(b). The act clearly states that taxpayer, as a vendee or customer, has an independent obligation, distinct from that of its vendor, to pay sales tax on a transaction. A vendee or customer must file a return with the Director and pay the tax if it did not pay the tax to the vendor. N.J.S.A. o4:32B 14(b), 17(a). The Director is authorized, in § 22(a), to proceed against either a vendor or its customer for collection of the tax. There is no language in the act to support an inference that a return filed by only one party to a taxable transaction will start the running of the statute of limitations against the non-filing party.
I am aware that hardships may be created for vendees because they do not customarily file sales tax returns and may be liable for payment of sales tax many years after a transaction has taken place, having no receipts or documentary evidence to establish payment of the tax. Nonetheless, judicial restraint prevents me from taking any action other than following the clear words of the statute. Any relief from the hard *114 ship imposed on a vendee by the lack of a statute of limitations must come from the Legislature. The Legislature has provided a three-year statute of limitations only when the party obligated to pay the tax has filed a return. Taxpayer had an independent obligation to pay the tax and an independent obligation to file a tax return. Because taxpayer failed to file a tax return, it is not entitled to the benefit of the three-year statute of limitations.
The Container Exemption Issue
Just as the Legislature “must express its intention to tax in distinct and unambiguous language,” Public Service etc. Transport v. State Bd. Tax App., 115 N.J.L. 97, 104, 178 A. 550 (Sup.Ct.1935), the Legislature’s intent to exempt from taxation must be clearly expressed. This principle finds support in a construction placed on § 8.28 of the sales tax act by the New Jersey Supreme Court. In Body-Rite Repair Co. v. Taxation Div. Director, 89 N.J. 540, 446 A.2d 515 (1982), the court said:
Retail sales and services are taxable under N.J.S.A. 54:32B-3(b) unless exempted. As a general matter, the Legislature located service exemptions in N.J.S.A. 54:32B-3(b) and property exemptions in N.J.S.A. 54:32B-8. Where the Legislature has placed service exemptions in N.J.S.A. 54:32B-8, departing from this general scheme, it has used clear and unambiguous language. [Id. at 544, 446 A.2d 515],
The exemption for commercial ships is a § 8 exemption.
The statute in the case at bar exempted from sales tax maintenance and repair of “commercial ships.” Since the enactment of the New Jersey Sales and Use Tax Act in 1966, the Division of Taxation has taken the position that the repair and maintenance of containers and chassis performed in New Jersey are subject to the sales and use tax. In 1973 and 1975, notifications appeared in the State Tax News to this effect. See State Tax News (Aug./Sept. 1973), Vol. II, No. 4 at 69 and State Tax News, (Nov./Dec. 1975), Vol. IV, No. 6 at 109-110. The Division also sent letters in 1969 and 1973 to a taxpayer who asked for a ruling on the sale, rental and repair of containers and to a New Jersey corporation engaged in repairing containers which were used to hold cargo in ocean-going vessels.
*115 A long-standing, consistent interpretation of a statute by the executive office charged with its implementation, if not interfered with by the Legislature, although not conclusive, see Service Armament Co. v. Hyland, 70 N.J. 550, 362 A.2d 13 (1976), is accorded great weight. This principle has been followed by the courts since as early as 1827, when the United States Supreme Court decided Edward’s Lessee v. Darby, 12 Wheat. 205, 25 U.S. 205, 6 L.Ed. 603 (1827). The reason for the rule is simple: “There has been an implied recognition that the [executive interpretation] expresses the legislative meaning.” Matawan Boro. v. Monmouth County Tax Board, 51 N.J. 291, 300, 240 A.2d 8 (1968); State v. Levien, 44 N.J. 323, 330, 209 A.2d 97 (1965).
The central inquiry in this case is whether in 1966 the Legislature intended the phrase “commercial ships” in N.J.S.A. 54:32B-8.12 to include removable containers used to transport cargo. In ascertaining legislative intent with respect to the original version of a statute that has since been amended, the New Jersey Supreme Court has cautioned that, “the opinions of legislators in [the year of amending a statute] are not instructive in determining the intent of the Legislature which enacted the original law many years earlier.” J.R. Christ Construction Co. v. Willete Assocs., 47 N.J. 473, 480, 221 A.2d 538 (1966). The court must be mindful of a cardinal principle of statutory construction: “A change of language in a statute or ordinance ordinarily implies a purposeful alteration in substance.” Essex Co. Retail, etc. v. Newark, etc. Bev. Control, 77 N.J.Super. 70, 78, 185 A.2d 404 (App.Div.1962); Airwork Service Div. v. Taxation Div. Director, 2 N.J.Tax 329, 347 (Tax Ct.1981), aff’d 4 N.J.Tax 532 (App.Div.1982), aff’d 97 N.J. 290, 478 A.2d 729 (1984); 1A Sutherland, Statutory Construction (4 ed. 1972), § 22.30 at 178.
This principle is borne out by the legislative history of the 1980 amendment specifically exempting cargo containers from the sales tax. It should be noted that in 1966, container ships were not in common usage, but by 1980, technological changes *116 in the shipping industry resulted in the widespread use of container ships. The Legislature recognized these changes.
Mindful as I am that “the mere introduction of ... bill[s] some years after the passage of the original enactment can in no way be instructive in determining the intent of the Legislature which enacted the original law,” Fraser v. Robin Dee Day Camp, 44 N.J. 480, 486, 210 A.2d 208 (1965), emphasis supplied; see also, Jersey City Prop. Owners etc. Assn. v. City Council, 55 N.J. 86, 95, 259 A.2d 698 (1969), the language in the statements accompanying these bills can be instructive as to recognition of technological changes which took place between the time of the original enactment and the amendment in 1980. The first Assembly Bill to amend the statute, Assembly Bill 1860, was introduced June 24, 1974. That bill, and all but one subsequent bill, contained a statement that “the statute as enacted, however, overlooks the technological revolution which has occurred in the ports of New Jersey in the sense that break-bulk commercial ships have all been replaced by container ships.” The statement in Assembly Bill 3331, introduced May 26, 1977, said that “New York recently amended its sales and use tax regulations to exempt marine cargo container purchases and repairs from the imposition of sales taxes. This change places New Jersey at a competitive disadvantage with regard to the marine cargo container industry ...” A senate committee statement accompanying Senate Bill 1048, introduced February 3, 1976, stated that “with the evolution of container ships, in place of break-bulk commercial ships, the cargo container is recognized as an integral and component part of the ship and should therefore be exempt to the same extent as is the ship itself.”
Containers are removable storage compartments designed to facilitate the loading and unloading of cargo and its transportation to and from cargo ships and land-based modes of transportation. Containers are stored both below deck and on the deck of the ship. The crucial point, however, is that they have a function separate from their use on ships and an *117 independent identity as personal property. They were held subject to ad valorem taxes in two states once a sufficient nexus with, and presence in, the taxing district on tax day were established. Sea-Land Service Inc. v. County of Alameda, 12 Cal.2d 772, 117 Cal.Rptr. 448, 528 P.2d 56 (Sup.Ct.1974); Integrated Container Services, Inc. v. R.K. Overstreet, 375 So.2d 1146 (Fla.App.1979).
This case is analogous to Browning-Ferris Indus. v. Taxation Div. Director, 3 N.J.Tax 16 (Tax Ct.1981). The issue in Browning-Ferris was whether a dumpster was part of the truck which transported it to and from its trash collection site. If the court had held that the dumpster was part of, or “integrated into,” the truck, the dumpster would have been exempt from tax under N.J.S.A. 54:llA-2(b)(3). The court held that the dumpster was not exempt because it was used primarily as a receptacle that spent the majority of its time off of the truck and was designed to be severable from the truck.
Hapag-Lloyd owns 85,000 containers. If all of its ships were fully loaded, they would hold, in the aggregate, 45,000 containers. Thus, at any given time, almost half of Hapag-Lloyd’s cargo containers are not on ships but are in transit, are being loaded or unloaded, or are awaiting use. The containers have an independent function apart from their function on board ship, and they are no more “part of” a ship than they are “part of” the trucks or trains, specially built to receive them, on which they are transported on land.
I respectfully disagree with my colleague, Judge Crab-tree, in his opinion in Maher Terminals, Inc. v. Taxation Div. Director, 6 N.J.Tax 513 (Tax Ct.1984), as to both the effect of the amendment to the statute and his conclusion that containers are “part of the ship.” I cannot conclude that the Legislature intended from the outset in 1966, when container ships were not in common usage, to exempt cargo containers from the sales tax. Statutes are not to be given retroactive effect unless the Legislature has clearly so stated. Riteway Rentals, Inc. v. Motor Vehicles Div. Director, 2 N.J.Tax 117, 120 (Tax Ct.1981); *118 see also Skulski v. Nolan, 68 N.J. 179, 202, 343 A.2d 721 (1975). In view of the detail present in the other exemption sections of N.J.S.A. 54:32B-8, and the consistent interpretation placed by the Director on § 8.12, I will not expand the meaning of “ship” beyond the ordinary and natural meaning of the word, i.e., the ship itself.
Taxpayer relies on Northeast Marine Terminal Co. v. Caputo, 432 U.S. 249, 97 S.Ct. 2348, 53 L.Ed.2d 320 (1977), and Pittston Stevedoring Corp. v. Dellaventura, 544 F.2d 35 (2 Cir.1976), for the proposition that containers are part of a ship and thus are exempt from taxation under the original statute. Taxpayer’s reliance is misplaced. Northeast Marine was concerned not with the independent nature and function of cargo containers for taxation purposes but with whether unloading cargo from a container at a situs away from the ship was the equivalent of unloading cargo directly at dockside. The task before the court was to interpret the phrase “adjoining area customarily used by an employer in ... unloading ... a vessel,” 33 U.S.C.A. § 903(a), for purposes of determining the applicability of the Longshoremen’s and Harbor Worker’s Compensation Act to an injured worker. The Court’s conclusion was that the work remains the same although the method and location of performance have changed: “The operation of loading and unloading has been moved shoreward.” 432 U.S. at 270, 97 S.Ct. at 2360. As in maritime cases generally, the place where an injury to a seaman occurred (“on shore” or “on ship”) was the issue for decision.
Leather’s Best, Inc. v. S.S. Mormaclynx, 451 A.2d 800 (2 Cir.1971), is also not on point. The court’s comment that a container is “functionally a part of the ship,” id. at 815, related to the construction of an insurance provision of the Carriage of Goods by Sea Act, 46 U.S. C.A. § 1304(5). The court, in determining the $500 per package liability of a common carrier, construed “package” to refer to each bale of goods within a container and not the container itself. 451 F.2d at 815. The court noted that interpreting “package” to mean “container” would produce an “insensible” result because the carrier’s *119 liability would be minimal relative to the value of the whole shipment. Id. The taxability of the containers was not in issue.
In conclusion, exemptions from taxation are construed narrowly, and all doubts are resolved against the party claiming the benefit of the exemption. Container Ring v. Director, Div. of Taxation, 1 N.J.Tax 203, 208 (Tax Ct.1980), aff’d 4 N.J.Tax 527 (App.Div.1981), certif. den. 87 N.J. 416, 434 A.2d 1090 (1981). Taxpayer has failed to sustain its burden of proving that it was entitled to an exemption for the years in question.
The Commerce Clause Issue
As a final matter, imposition of a sales and use tax on repair and maintenance of marine cargo containers used in ships engaged in interstate commerce does not violate the Commerce Clause of the United States Constitution. U.S. Const. Art. I, § 8, cl. 3.
The Supreme Court has set down a six-part test for evaluation of the validity of a state tax on instruments of foreign commerce: (1) The activity being taxed must have a sufficient nexus with the taxing state to justify the tax; (2) the tax must be fairly related to the services and benefits provided the taxpayer by the taxing state; (3) the tax cannot discriminate against interstate commerce, and (4) the tax must be fairly apportioned to local activities and cannot result in multiple burdens being placed on the taxpayer. Complete Auto Transit, Inc. v. Brady, 430 U.S. 274, 287, 97 S.Ct. 1076, 1083, 51 L.Ed.2d 326 (1977). Also, (5) the tax must not prevent the federal government from “speaking with one voice” when regulating commercial relations with foreign governments and (6) the tax must not create a substantial risk of international multiple taxation. Japan Line, Ltd. v. County of Los Angeles, 441 U.S. 434, 99 S.Ct. 1813, 60 L.Ed.2d 336 (1979). See also Container Corp. of America v. Franchise Tax Board, 463 U.S. 159, 103 S.Ct. 2933, 77 L.Ed.2d 545 (1983); Washington Rev. *120 Dept. v. Stevedoring Ass’n., 435 U.S. 734, 98 S.Ct. 1388, 55 L.Ed.2d 682 (1978).
New Jersey’s sales and use tax as applied to taxpayer is valid under the above six-part test. The transactions taxed took place exclusively in New Jersey. There has been no proof of taxation by other states on the sales and services in question. The tax is imposed uniformly on all non-exempt sales and services. There is no problem of apportionment because, unlike the ad valorem property taxes in Japan Line, Ltd., the tax is related to sales and services exclusively in New Jersey which are not taxable by other jurisdictions. No substantial risk of multiple international taxation is created, and finally, local sales and use taxes do not conflict with federal foreign policy. See Washington Rev. Dept. v. Stevedoring Ass’n, supra, in which the court upheld a 1% tax on stevedoring activities conducted entirely within the State of Washington.
The Clerk of the Tax Court is authorized to enter judgment dismissing taxpayer’s complaint.

 N.J.S.A. 54:32B-14(a) provides that the vendor of taxable services is personally liable for the tax imposed by the act. However, as an alternative collection device, NJ.S.A. 54:32B-14(b) provides that any customer not paying the tax to the vendor is required to pay the tax directly to the Division of Taxation and file a corresponding tax return.